Thanks very much, Your Honor. How many of these have you presented so far? This is only my second. I am new to the matter, in fact, but Your Honor is happy to be here this afternoon on behalf of the Dugaboy Investment Trust. The reason we're here today is that District Court erred when it made the determination that it was proper to exercise bankruptcy court jurisdiction, or it had been proper for the bankruptcy court to exercise its jurisdiction, over the settlement insofar as it concerned two non-debtor parties, UBS and Multistrat. The court began and relied first and foremost on the fact that it speculated that UBS had not been willing to do the deal without the settlement involving Multistrat, but as you'll see in the decision, there's no citation for that proposition. It's pure speculation, and there's in fact reason in the record to conclude that it's incorrect speculation. There were other entities that were similarly situated to Multistrat, five of them in total, including Multistrat, that were named as defendants by UBS. Two of them settled with UBS separately and were not part of this settlement that the District Court insisted on describing as a global settlement. In fact, two parties had done exactly what we think should have happened here, engaged directly with UBS and reached their own settlement outside of the bankruptcy court, and those were also funds managed by Highland. It's not the case that every exercise of control rights means that we're talking about assets that fall within the bankruptcy estate or should be considered part of the bankruptcy estate such that jurisdiction is proper. Imagine for a moment that Highland had exercised its control rights to tell Multistrat to sell an asset to Bank of America, to any other entity. The court might be positioned to say, if it determined that this was outside the ordinary course of business, go ahead, you can direct Multistrat to execute this sale. But what that wouldn't do is make that a sale free and clear of liens with all the other protections that a sale that takes place within the bankruptcy court is entitled to. It would still be a sale outside of the bankruptcy court's jurisdiction. And that's the distinction that we're looking for here. It was one thing to tell Multistrat that they were entitled, sorry, to tell the debtor that they were entitled to direct the settlement to occur. It's quite another thing to approve this settlement so as to provide the imprimatur of the bankruptcy court and foreclose the ability of other parties, third party, non-party, non-debtor third parties, foreclose their ability to bring whatever claims they might determine that they might have and to bring those in other fora. Counselor, you're more familiar than I am at least, maybe not my colleagues, related to jurisdiction is quite broad and non-debtors can be involved in what occurs and where to draw the line. I mean, you no doubt have some plausible arguments, but it does seem to me that between the control that the debtor has over Multistrat in some fashion or another and the disagreements you have of whether we should look at this settlement as a whole or divided into two, you have an uphill climb on right of due jurisdiction. Your Honor, I think this court has been very cognizant about what it means to extend jurisdiction to effectively create third party releases. This court has been appropriately skeptical of third party releases and has recognized instances in which something functions as a third party release. And the court has been clear. Your principle case is zailed. You don't have to embrace it, but it does seem to me readily distinguishable. I think the important things to pull from zail are, there's a few points that are really pertinent here. So zail makes really clear that purely shared facts, right, the fact that things are factually intertwined, that is not enough. Zail is clear that while related to jurisdiction is broad, it is not limitless. And the mere fact of shared facts, of a shared factual, intertwined factual basis, not enough. Also, and perhaps most importantly, zail is extremely clear on the point that you cannot use a settlement to create jurisdiction, that you cannot do through settlement what you would not be able to do otherwise. And so here, if we look at the district court's decision, it suffers from this circularity. The district court relies extensively on the idea that here the debtor is exercising its control rights to get Multistrat to settle, and that that fact is a significant component of why there's jurisdiction. But zail says no, that's not how this works. You can't manufacture jurisdiction by relying on the settlement itself. There's a number of ways in which the court also talks about zail that are inconsistent with a careful reading of zail. So zail, for example, does not suggest, it does not say that any time a debtor's behavior is implicated, that that sweeps the claims of non-debtors into the bankruptcy court. That language actually comes from a portion of zail that's distinguishing cases, that's talking about, you know, that, discussing whether they are zail's agreement to indemnify Cigna provided related to jurisdiction, but the other piece I will point to is zail also does not hold that a bankruptcy court has related to jurisdiction any time a non-debtor is a non-debtor if there's independent claims on the part of the debtor. So these two things are really important. These are aspects of zail that the district court looks to because there's language there, but these are not holdings of zail. And so zail is actually making these other points that I would point the court to, that I would ask the court to make careful attention of. Zail is very cognizant that you want to avoid a cart before the horse problem, to put it really bluntly, that you don't want the fact of the settlement to become the grounds on which the bankruptcy court's jurisdiction is extended. I guess, I hear you making a negative case for why this settlement is not underrelated to jurisdiction. I'd like you to make the positive case because the test is clear. I'm looking at zail right here. The matter's related to if, quote, the outcome of that proceeding here, the settlement, could conceivably have any effect on the estate being administered in bankruptcy. It's also related if the outcome could alter the debtor's rights, liabilities, options, or freedom of action, either positively or negatively, in any way impact upon the handling and administration of the bankrupt estate. Well, maybe I'm not asking you to make a positive case, but I am asking you this. Explain to me why under those prongs, if those are different prongs, why doesn't this settlement fall within that, what I read as a fairly broad test? I'm going to make one background point, and then I will certainly, Judge Duncan, answer your question. It occurred to me as you framed the question that I should note, the reason I've approached speaking about the case in this way today is because, of course, the burden in the first instance was on the appellees here below to show that there was jurisdiction. And I do think it's important to recognize, as you read the district court's decision, that the court didn't approach it that way. The court wasn't looking for them to carry their burden. And so what we see in the record is an absence of evidentiary. So what we see in the case below is an absence of an evidentiary showing that would make these points that you are raising. But I would say that there's a number of reasons to conclude that this would not implicate the estate. We have entirely separate entities. They are separate corporate structures with their own funds, and of course they pay their settlements out of their own funds. So the 18.5 that comes from Multistrat would not have otherwise flowed to Highland, and the money that Highland paid would not have otherwise flowed. If we assume that everyone was operating properly, exercising their fiduciary duties in the case of Highland as an investment manager, there's no reason to think that the amounts that were being paid here should have been affected by the presence one of the other. So just in the same way that other entities that were similarly situated to Multistrat were able to settle separately, so too Multistrat should have been able to carry out its settlement outside the bankruptcy court. A few other points on this. Highland was indemnified, so when we talk about just could there have been liability if there was a fine, there's a number of different reasons that would speak to why Highland wouldn't have been on the hook, including just Highland's relationship to Multistrat, which is a very you know, is that of an investment manager, and several steps removed an indirect controlling interest, but one where there is an LLC that is part of that chain of ownership, such that this is not a situation where there is liability flowing to Highland itself as a function of its controlling interest. Okay. Thank you. If there are no further questions, Your Honor, I will reserve the time to come back and speak with you at the end. Is that all right? Thank you, Your Honors. Good afternoon, Your Honors. The only issue in this appeal is whether the bankruptcy court had jurisdiction to approve a settlement between UBS, Highland, and Multistrat, a settlement that resolved a decade-long litigation, and importantly resolved a billion-dollar claim against Highland, paving the way for distributions to creditors. Only the appellant, the Dugaboy Investment Trust, the holder of a 1.71 percent interest in Multistrat and an affiliate of James Dondero, appealed the bankruptcy court's order. The bankruptcy court found it had jurisdiction under 28 U.S.C. 157 and 1334 for two reasons. First, Highland requested authority to exercise its power as Multistrat's exclusive investment manager. Which right constitutes property of the estate to approve the settlement in an out-of-the-ordinary course transaction? The bankruptcy court thus had core jurisdiction to approve that request under Section 363. Second, the court found that— Core jurisdiction because of the management control? Yes, Your Honor. The management control right in Multistrat. Remember, Highland was the the interest in an investment vehicle, an LLC, the management rights, the contract rights, is property of the estate. Highland could— The district court did not accept that argument, did it? Excuse me? Did the district court say this was core jurisdiction? So, Your Honor, what the district court did was it focused on comments that the court made in the transcript on how this was at least related to jurisdiction. What the district court also did in one of the footnotes is say, Dougaboy waived the right to argue that this wasn't appropriate under Section 363. So while the district court did not analyze the core jurisdiction and the district court approved on the basis of the related to jurisdiction, the order in this case to the bankruptcy court clearly said it had core jurisdiction. And the district court found that the exercise of the property rights under 363 was a matter that had been waived under appeal. The authority you have to say that management controls is a property right, is that the foreign jurisdiction? Is that the case? It's the Thomas case, I believe, Your Honor, from Louisiana. But it's not really a controversial proposition. The appellants don't contest. Even Ms. Chaffet's argument in this court, she said, not every property right, you need court approval. And she pointed to sales of managed funds. Sure, Highland managed a lot of funds. Those funds bought and sold things all the time. Buying and selling things does not implicate an ordinary course transaction. Why are we here? Why did we come to the bankruptcy court? We came to the bankruptcy court because this was an out-of-the-ordinary course transaction. Why? This was of a 12-year litigation where Highland was alleged to be a participant in a fraud with Multistrat. 12-year litigation where there's a billion-dollar claim asserted against Highland and there was claims asserted against Multistrat. That was an out-of-the-ordinary course transaction. That required Highland to seek court approval, and that provides this court with court jurisdiction. Second, the bankruptcy court found that a nexus existed between the UBS-Multistrat dispute and the Highland bankruptcy case, and the settlement thereof had a conceivable effect on the Highland State, as Judge Duncan, you identified, as the rule from Zell. So to talk a little bit about more of the court jurisdiction, Multistrat, 56% of which is owned by Highland, can only act through its investment manager, Highland, and its general partner, Multistrat Credit Fund, LP, which is controlled by Highland. Multistrat has no employees, and Highland has the exclusive ability to manage and control it. So are you saying that we should consider Multistrat and Highland as one? No, I'm not saying that, Your Honor, because specifically they were not an alter ego, right? So Ms. Chaffetz points to the fact of how there was no liability because Highland, because other parties settled and because Highland was not related. I will go through the facts of the underlying litigation and clearly show how the liability against Multistrat was liability against Highland under a different theory. It related to your— Multistrat a Texas entity? I believe Multistrat is a Texas entity. So, Your Honor, Highland's management interest in Multistrat, property of the estate, not a controversial proposition. And through the settlement motion, again, Highland sought the authority to use that property of the Multistrat to enter into the settlement. And the settlement of the decade-long litigation, the $1 billion claim against the estate, the intertwining of the allegations that Highland was a participant in this fraud, that formed the basis of why it was an out-of-the-ordinary course transaction. And the Bankruptcy Court granted Highland such authority, and an appellant didn't challenge that argument on appeal. Again, there's no argument by appellant in the District Court that C-363 was inappropriate. They ignore the core argument. And that should end the jurisdictional analysis, Your Honor. They ignored the argument of C-363 in the Bankruptcy Court. They ignored it in the District Court. And they kind of really ignored it here, trying to argue that, well, maybe certain things Highland needed to do in exercising the rights, but it wasn't this. That is not persuasive, Your Honor. There's no credible argument against core jurisdiction. But there is an equally compelling independent reason that leads to the same conclusion. Appellant's entire argument is predicated on its claim that the Bankruptcy Court did not have related to jurisdiction to approve the settlement, because UBS's claims against Multistrat are distinct from UBS's claims against Highland, and that somehow Highland gratuitously manufactured jurisdiction before this Court by entering into the settlement. The Bankruptcy Court disagreed, reasoning that the three-party dispute settlement was a grand bargain resolving the decade-long litigation. And the District Court rejected the characterization of the settlement agreement as two distinct settlements, reasoning as follows. The parties executed a single settlement agreement which lists Highland, Multistrat LP, and UBS's parties and signatories. UBS was willing to make that agreement only after it secured claims for over $60 million each. Multistrat agreed to pay over $18 million, and Highland agreed to release its claims against UBS. Multistrat LP's settlement with UBS thus has a conceivable effect on the bankruptcy estate, because without it, UBS may not have been willing to release its claims against Highland. Counsel points to the fact that there wasn't anything in the evidentiary record. We disagree. We think there's substantial testimony from Mr. Seager in how they're intertwined. But even if they could have theoretically been separate settlement agreements, that is irrelevant. The only question before this Court is whether the Bankruptcy Court had related to jurisdiction to approve the multi-party settlement agreement before it, not whether the parties could have constructed this in a different way, not whether Highland should or shouldn't have been. That's not relevant. The relevant question is, this settlement, does this Court have the jurisdiction? But again, the Court did not even address the related to jurisdiction if it accepts our core argument. If related to jurisdiction is even relevant then under Zale, the Court only determined whether there was some nexus between the UBS-Multistrat dispute and the Highland bankruptcy case such that their resolution through the settlement agreement could have a conceivable effect on the Highland estate. And in ruling that it did, the District Court, citing Zale, emphasized that it is the relationship of the dispute to the estate that confers jurisdiction, not the identity of the parties. And what is the relationship of the Multistrat UBS dispute to the Highland estate? It is more than just the parties were involved in the same lawsuit. It's more than just there were shared facts. Rather, related to jurisdiction exists because Highland was allegedly liable for the claims that UBS was asserting against Multistrat, albeit under a different theory. And settling the claims against Multistrat facilitated settlement of UBS's claims against Highland, the largest claim in the estate. The UBS litigation dates back to the 2009 financial crisis when UBS agreed to finance the acquisition of a substantial amount of assets by two Highland affiliates in a transaction managed by Highland. UBS would then warehouse the assets while Highland raised the collateralized debt obligation that would ultimately own those assets. Unfortunately, after the assets were acquired, but before Highland could raise the money, the market crashed, the assets declined precipitously in value, and UBS made a series of capital calls to Highland's affiliates. But rather than honor those capital calls, Highland, which controlled the two parties that were obligated to UBS, began to transfer assets among a variety of related parties it controlled to make those Highland affiliates judgment-proof. And one of those parties that received the transfers was Multistrat, the non-debtor signatory to the settlement agreement subject to this appeal. The state court lawsuit that the settlement agreement resolved was commenced in February 2009 when UBS sued Highland and its two affiliates for failing to honor their obligations under the warehouse agreement. Shortly thereafter, in March 2009, the fraudulent transfers began. Highland caused the entities subject to the lawsuit, among others, to transfer their assets to other Highland-controlled entities, including transfers of approximately $26 million of assets to Multistrat and one of its wholly-owned controlled subsidiaries. After UBS became aware of these fraudulent transfers, it amended the lawsuit in May 2011 to add as the defendants the Highland-related entities receiving the March 2009 fraudulent transfers. Multistrat was one of the defenses. UBS also sought to hold Highland directly responsible for the transfers because Highland controlled each of those entities involved. And by orchestrating these transfers, it breached the covenant of good faith and fair dealing to UBS. The lawsuit was split into two phases after finding that the two Highland-controlled entities breached the warehouse agreement, the New York court entered judgment in favor of UBS for approximately $1 billion in 2020. Appellant incorrectly states in the reply brief that UBS had obtained a judgment against Multistrat in phase one, but that's not correct. Rather, it was the second phase of the trial, which was to address UBS's claims against Highland for masterminding the scheme and its claims against all the fraudulent transfer recipients, including Multistrat. Highland's October 2019 bankruptcy intervened, and the automatic stay prevented that lawsuit from proceeding. UBS filed a billion-dollar claim against the estate, representing more than 75% of the claims allowed. Importantly, in December 2020, as part of Highland's planned confirmation process, the bankruptcy court entered an order pursuant to Bankruptcy Rule 3018 determining that UBS had a $94.8 million claim against Highland for planned voting purposes consisting of several components, and that 3018 order is found at Record and Appeal 1489. One component was the bankruptcy court's determination that there was a 90% probability that the UBS fraudulent transfer claim against Multistrat and its related claims against Highland for the bankruptcy court awarded UBS an approximately $23 million claim against Highland for planned voting for facilitating the fraudulent transfers to Multistrat, and the transcript where the court discusses that is at Record and Appeal 874-76. So the argument that UBS's claims against Highland had nothing to do with UBS's claims against Multistrat is just wrong. They were allegedly liable for the same conduct, albeit under different theories, and as Mr. Seery testified at the approval hearing, their claims were intertwined. And as the district court recognized, the same conduct tied the claims together when it found that any fraudulent transfer involved Highland's affiliates and Highland had to initiate any fraudulent transfer through its control of Multistrat. The settlement agreement resolved these related claims and facilitated resolution of the claims against Highland. Unlike the claims that the court found unrelated in Zale, UBS's claims against Multistrat involved Highland's behavior for which UBS had an independent claim. Turning to Zale. Zale is the key case. We'd like to spend a couple minutes on it. In Zale, the debtor, three of its directors and officers, and Cigna, its primary D&O insurance carrier, agreed to a settlement. One of the settlement's components was an injunction prohibiting Newfick, the debtor's excess D&O carrier, and Feld, a non-settling director and officer, from pursuing claims against Cigna. Newfick and Feld argued that the bankruptcy court did not have related to jurisdiction to enjoin both of them, non-debtors from asserting claims against Cigna and non-debtor. And counsel talks about releases and jurisdiction. The court in Zale was clear. The first part of the analysis was whether the court had jurisdiction. The second part of the analysis was whether the court had the power. The court ultimately held that it did not have the power to permanently enjoin the parties after determining that it had jurisdiction over certain of the claims. So the bankruptcy court found it had jurisdiction and the district court affirmed. But in reversing, the Fifth Circuit parsed through the Newfick and Feld's claims to determine whether they would have a conceivable effect on the debtor to provide jurisdiction. The court determined that Newfick and Feld's fraud claims against Cigna did not have any conceivable effect on the debtor because pursuit of those claims would not have any impact on the debtor at all. Cigna argued that the debtor's estate was impacted because under the settlement the debtor agreed to indemnify Cigna against any such claims. The court said no because the indemnification claim didn't arise from the debtor's conduct and the debtor couldn't be held directly liable by Newfick and Feld. So the debtor, as counsel indicated, couldn't create jurisdiction by having a contractual agreement from indemnification. But that's not what's going on here. Here Highland is fraudulent transfers that Multistrat received. The liability is real as the bankruptcy court awarded UBS a $23 million claim against Highland for that conduct. Zell also found that the bankruptcy court did have related to jurisdiction with respect to Newfick and Feld's contract claims against Cigna. The contract claims were the party's competing claims to the $10 million in Cigna policy proceeds the debtors were to receive under the settlement. Because the debtor's right to those proceeds were jeopardized by the contract-based litigation between Newfick, Feld, and Cigna, the bankruptcy court said it had, the Fifth Circuit said the bankruptcy court had related to jurisdiction. In this case, UBS's claims against Multistrat directly impact the amount of UBS's claims against Highland and therefore the distributions to the creditors. Last year, Judge Southwick and Weiner, you were both on the panel in the taxes funding case. There the panel addressed the bankruptcy court's jurisdiction to adjudicate a dispute between a debtor's non-debtor subsidiary, its lessor, and a party who provided a letter of credit to support the non-debtor subsidiary's obligation to the lessor. The panel concluded that the bankruptcy court had post-confirmation jurisdiction over that dispute, a narrower standard than the pre-confirmation related to jurisdiction we're dealing with here today. The panel relied heavily on Zale, citing it for the proposition that related to jurisdiction may extend to non-debtors' state law disputes. And the panel found related to jurisdiction existed in the taxes because the outcome of the litigation among non-debtors threatened to stabilize the fragile consensus around a settlement that was crucial to the debtors' plan. So too was resolution of the UBS-Highland multi-strat dispute crucial to the plan's success. If Highland was forced to litigate with UBS, it would have had to reserve for a billion dollar claim, spend millions of dollars litigating with UBS, which would have substantially reduced the funds available to creditors and delayed distributions for years. Your Honor, in conclusion, the court should affirm because there are two reasons the bankruptcy court had jurisdiction to approve the settlement. First, the bankruptcy court had core jurisdiction to approve Highland's exercise of its managerial rights, which are property of the estate, to approve entry into the settlement under Section 363B. That is what the bankruptcy court's order found. Second, the bankruptcy court had related to jurisdiction over the settlement. UBS's claims against multi-strat in Highland are intertwined, establishing the nexus with the Highland bankruptcy case. And resolution of those claims resolved the decade-long litigation among the parties, paving the way for creditor distributions, thus clearly meeting the conceivable effects standard set forth in sale. This court should affirm the district court. Happy to answer any other questions in my last two minutes.  If I may, Your Honor, just a few quick points. So first of all, Judge, to your question, multi-strat is a Delaware corporation, not a Texas corporation. But now to the more core issues, to borrow the phrase. With regard to core jurisdiction, let me be really clear. This is not a situation where we're ignoring anything. The point is very much that 363B doesn't get the appellee, doesn't get the debtor where they're trying to go. So we didn't raise . . . I'm repeating it here, and I don't see that you responded to it. It still gets to the issue of whether this sort of control over the decision-making is a property right. Starting that it's a property right, the brief says, appellee's contractual right to manage and control multi-strat means that this is property of the estate and that it is core jurisdiction. So does all rise and fall on whether we agree that this management control is a property right or is there more to . . . No, no, Your Honor. There's more to it, and let me explain. So 363, as the analogy I described earlier, it goes to the question, if you assume that the dealing here was outside the ordinary course of business, then we are not disputing that in that instance you would need authority from the bankruptcy court for . . . sorry, let me state again. If you think this was outside the ordinary course of business, then there's no dispute here that you would then have to go to the bankruptcy court and get authority to exercise control rights. We made the . . . took the position that this actually was not outside the ordinary course of business for an investment manager here, the debtor highland. The reason for that is that as much as this kind of settlement is not part of the normal business of multi-strat, this is the kind of dealing that is part of the ordinary decision-making and direction that an investment manager engages in. So for that reason, we didn't contest . . . we took the view that you didn't need to obtain 363B approval. You didn't need to get the court's approval to exercise control rights here. You were proceeding in the ordinary course. And as I noted before, there are reasons to conclude that even the debtor has taken . . . understands that because in May 2020, the debtor directed a different settlement involving multi-strat, and in that instance did not seek approval from the bankruptcy court. So Highland exercised its control rights to direct a settlement in 2020 involving multi-strat that did not go through the bankruptcy court. So that alone is an indication that they understand that it wasn't necessary to come to the court and that this wasn't a bankruptcy court issue. Now given that the court did exercise 363B, looked at that, gave them approval, what we were explaining in the opening with the analogy presented regarding a sale is that even taking the view that the bankruptcy court needed to approve the exercise of control rights, that's as far as it goes. You have bankruptcy court approval for the exercise of control rights to direct multi-strat to enter a settlement. That doesn't mean that the settlement is then within the jurisdiction of the bankruptcy court, such that it is subject to bankruptcy court approval, the bankruptcy court's blessing, and as a result, an entity who has been forced to go into bankruptcy court to object to the settlement has had to litigate in a court that didn't have proper jurisdiction and now is faced with the extinguishment of any rights to contemplate as it otherwise would have, whether it wishes to bring claims as appropriate against the non-debtors who are in that settlement. A few more points very quickly. I hope that your honors took note that when it came to the question of what sort of an evidentiary basis there is or isn't to support the conclusion that UBS wouldn't have otherwise done the settlement if it hadn't involved multi-strat, the only thing that opposing counsel pointed to was the testimony of Mr. Seary, his client, the chief restructuring officer for the debtor. I would also note that on this point, relatedly, unlike in the Texas where there is a question of a destabilizing element that could have blown everything up, here we have every reason to conclude on the record that this $18.5 million settlement with multi-strat would have not blown up anything, just in the same way that other settlements that took place separately did not vitiate UBS's interest in a settlement here with Highland. And finally, I hope that your honors took note that opposing counsel acknowledged repeatedly that the claims against multi-strat and against the debtor are on different theories. Indeed, they were a 2010 suit. No, no, I will just then conclude with one other sentence, which is simply this, that while a limited partnership interest in multi-strat is one of the assets of the Highland estate, that does not make the contingent liabilities of multi-strat subject to or related to jurisdiction of the court. And that concept has been repeated in a variety of Fifth Circuit cases recognizing that just because you have an ownership interest in something, that doesn't bring in all of the wholly owned subsidiaries, it doesn't bring in everything you have stock in. That would be a tremendous expansion of bankruptcy court jurisdiction. Thank you.